IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SPENCER CRAFT                                                                    PLAINTIFF


            V.                            CIVIL NO. 10-5153


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                          DEFENDANT

## <u>MEMORANDUM OPINION</u>

Plaintiff, Spencer Craft, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Social Security Administration (Commissioner) denying his claims for

a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI)

benefits under the provisions of Title II and XVI of the Social Security Act (Act). In this judicial

review, the Court must determine whether there is substantial evidence in the administrative record

to support the Commissioner's decision. See 42 U.S.C. § 405(g).

## I.      Procedural Background:

Plaintiff protectively filed an application for DIB and SSI on September 17, 2007, alleging

an inability to work since January 1, 2007, due to emphysema, chronic obstructive pulmonary

disease (COPD), and arthritis in his back and knees. (Tr. 117-122, 144, 180). For DIB purposes,

Plaintiff maintained insured status through March 31, 2011. (Tr. 128, 141). An administrative

hearing was held on April 14, 2009, at which the Plaintiff appeared with counsel and testified. (Tr.

11-33). At the hearing, the onset dated was amended to January 1, 2006. (Tr. 46).

By written decision dated July 24, 2009, the Administrative Law Judge (ALJ) found that

during the relevant time period, Plaintiff had an impairment or combination of impairments that were

severe. (Tr. 89). Specifically, the ALJ found Plaintiff had the following severe impairments:

emphysema and COPD. (Tr. 89). However, after a review of all of the evidence, he determined that

Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the

Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 90). The ALJ found

that Plaintiff retained the residual functional capacity (RFC) to perform light work, except that while

Plaintiff can:

> frequently lift and or carry ten pounds, and occasionally twenty pounds, push and/or pull
> within the limits for lifting and carrying, sit (with normal breaks) for a total of six hours in
> an eight hour work day, and stand and/or walk for a total of six hours in an eight hour work
> day, he must avoid exposure to humidity/wetness, concentrated dusts, odors, fumes, and
> pulmonary irritants.

(Tr. 90). With the help of a vocational expert (VE), the ALJ determined Plaintiff could not perform

any of his past relevant work as a maintenance mechanic, truck driver, laborer, welding assistant,

or electrician helper. (Tr. 93). However, the ALJ found that the maintenance mechanic job[1] had

skills that were transferable to light work, and that with these skills Plaintiff could perform work in

the national economy as a case finishing machine operator, a hydraulic press servicer, a gas welding

machine mechanic, or a spray gun repairer. (Tr. 93-94).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on June 10, 2010. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1).

This case is before the undersigned pursuant to the consent of the parties. (Doc. 2). Both parties

have filed appeal briefs, and the case is now ready for decision. (Docs. 4, 7).

II.    **Evidence Presented:**

The record reflects that Plaintiff was born in 1963, and has a 10th grade education. (Tr. 141,

---

[1]Maintenance Mechanic, Dictionary of Occupational Titles (DOT)# 638.281-014

150).  Plaintiff's past relevant work consists of work as a maintenance mechanic, truck driver,

laborer, welding assistant, and electrician helper.  (Tr. 48-57).

Prior to the relevant time, Plaintiff was treated for herpes zoster shingles at the Washington

Regional Medical Center on March 20 and 22, 2003.  (Tr. 349-365).  Plaintiff was given Acyclovir,

Meperidine, and Promathazine.  (Tr. 356).

In a disability report dated September 17, 2007, Plaintiff claimed he went to the Ozark

Guidance Center in Berryville, Arkansas, for testing for attention deficit hyperactivity disorder

(ADHD) in 2006. (Tr. 146).  However, Ozark Guidance Center indicated that they did not have any

records relating to the Plaintiff.  (Tr. 209).

The pertinent medical evidence from the relevant time period reflects the following.  On July

25, 2007, Plaintiff entered the emergency room of Northwest Medical Center-Bentonville,

complaining of chest congestion.  (Tr. 201-207).  Plaintiff reported that he was a pack a day smoker

and an occasional drinker.  (Tr. 202).  X-ray's of Plaintiff's chest showed no acute pulmonary

abnormalities.  (Tr. 206).  Plaintiff was diagnosed with acute asthmatic bronchitis and treated with

Levaquin and Prednisone.  (Tr. 203, 204).

On September 21, 2007, Plaintiff was brought by emergency medical services (EMS) to the

emergency room of Northwest Medical Center-Bentonville.  (Tr. 193).  Plaintiff complained of

trouble breathing, which had started a day earlier.  (Tr. 193).  Plaintiff reported that he was a two

pack a day smoker, that he drank every other day, and that he drank a fifth of bourbon that day.  (Tr.

193, 196).  Blood tests revealed that Plaintiff had an Ethanol level of 350.  (Tr. 194, 199).  X-ray's

of Plaintiff's chest showed that his lungs were hyper-expanded, but that there were no acute

pulmonary abnormalities.  (Tr. 198).  Plaintiff was treated with a normal saline IV, then released.

(Tr. 195, 197).

On December 30, 2007, Plaintiff entered into the emergency room of Northwest Medical Center-Bentonville, with a cough and congestion. (Tr. 320-332). X-rays of Plaintiff's chest showed no pulmonary infiltrates, pleural effusions, or mass lesions. (Tr. 326). Plaintiff was diagnosed with bronchitis and given prescriptions for Albuterol, Zithromax, Tussionex, and Prednisone. (Tr. 328-329).

On January 8, 2008, Plaintiff entered the emergency room of the St. Mary's Hospital in Rogers, Arkansas, with respiratory distress, aches, and a fever, and was admitted by Dr. K. Lamar Howard . (Tr. 217-227). X-rays of Plaintiff's chest showed right middle lobe infiltration, and Plaintiff was assessed to have right middle lobe pneumonia and underlying COPD. (Tr. 219). Plaintiff reported that he used to be a heavy smoker, as many as three packs a day, but was now down to a half a pack a day. (Tr. 218-219). Plaintiff was treated with IV fluids, oxygen, Rocephin, and Levaquin. (Tr. 221). Once Plaintiff was afebrile for 48 hours, he was discharged on January 11, 2008. (Tr. 221). A final diagnosis of right lower and middle lobe pneumonia and pneumococcal septicemia was noted. (Tr. 221). Plaintiff was sent home with a five day sample of Levaquin, and instructed to follow-up with Dr. Howard in one week. (Tr. 221).

On January 17, 2008, Plaintiff entered into the emergency room of St. Mary's Hospital in Rogers, Arkansas. (Tr. 269-271, 286-287). Dr. Howard noted in his admission report that Plaintiff was scheduled for a follow-up visit in the office, but did not feel well and came in to the emergency room instead. (Tr. 269). Plaintiff reported that since his previous discharge he had refrained from smoking. (Tr. 270). X-rays of Plaintiff's chest revealed that his right side infiltrate was smaller. (Tr. 270). However, there was a persistence of his small right side pleural effusion. (Tr. 270).

Plaintiff was started on IV Levaquin and Vancomycin.  (Tr. 271).

A consultation note from Dr. Edward L. Jackson, dated January 18, 2008, suggested that Plaintiff have a CT scan of his chest performed.  (Tr. 274-276, 283-284).  The resulting CT scan of Plaintiff's chest, read by Dr. John P. Shoppach on January 18, 2008, revealed dense consolidation and opacification in the right middle lobe, small left pleural effusion, and mediastinal[2] and right hilar[3] lymphadenopathy[4]  measuring up to three centimeters.  (Tr. 262-263).

On January 21, 2008, Plaintiff underwent an echocardogram performed by Dr. Douglas L. Marciniak.  (Tr. 265-266, 291-292).  The test revealed a prominent echodensity in the right atrium, which was interpreted as a prominent eustachian valve.  (Tr. 266, 291).  The test further revealed trace mitral and tricuspid insufficiencies, but no diagnostic evidence of endocarditis.  (Tr. 266, 292).

On January 22, 2008, Plaintiff had a surgical consultation with Dr. Wayne H. Welsher.  (Tr. 272-273, 282).  The risks and benefits of surgery were discussed, and Plaintiff decided to undergo surgery. (Tr. 272-273, 282).   Later that same day, Plaintiff underwent a right anterolateral thoracotomy[5] with decortications of empyema cavities and a partial pleurectomy of the right middle

---

[2]Mediastinum- The mass of tissues and organs separating the two pleural sacs, between the sternum anteriorly and the vertebral column posteriorly and from the thoracic inlet superiorly to the diaphragm inferiorly. It contains the heart and pericardium, the bases of the great vessels, the trachea and bronchi, esophagus, thymus, lymph nodes, thoracic duct, phrenic and vagus nerves, and other structures and tissues. Dorland's Illustrated Medical Dictionary 1135(31st ed. 2007).

[3]Hilum-anatomic nomenclature for a depression or pit at the part of an organ where vessels and nerves enter. Dorland's Illustrated Medical Dictionary 871 (31st ed. 2007).

[4]lymphadenopathy- a disease of the lymph nodes, usually with swelling.  Dorland's Illustrated Medical Dictionary 1098 (31st ed. 2007).

[5]Thoracotomy- surgical incision into the pleural space through the wall of the chest. Dorland's Illustrated Medical Dictionary 1946 (31st ed. 2007).

lobe, performed by Dr. Welsher.  (Tr. 267-268, 280-281).  Surgical notes revealed that no gross

empyema[6] was noted, but there was significant subpulmonic empyema, with gelatinous material

being removed.  (Tr. 267).  Inferior/posterior and anteropical chest tubes were placed.  (Tr. 268).

Between January 22 and January 27, 2008, Plaintiff had five chest x-rays taken with his large

right side bore chest tube in place.  (Tr. 254-259).  On January 27, 2008, Plaintiff had his chest tube

removed and another chest x-ray taken.  (Tr. 253).  The post-removal x-ray revealed stable airspace

opacity in the right lung, interval improvement in subsegmental atelectasis[7] in the left lung, and no

evidence of recurrent pneumothorax.[8]  (Tr. 253).

Plaintiff was discharged from St. Mary's Hospital on January 28, 2008.  (Tr. 228, 285). Dr.

Howard noted a final diagnosis of subpulmonic empyema and pneumococcal pneumonia.  (Tr. 228,

285).  Discharge notes stated that Plaintiff was given eleven days of IV Levaquin and Vancomycin,

and had his subpulmonic empyma drained through cardiothoracic surgery with a chest tube.  (Tr.

228, 285).  No organisms were grown from the empyema fluid.  (Tr. 228, 285).  At discharge,

Plaintiff was given a three day sample of Levaquin, and instructed to return to see Dr. Howard in one

week, and Dr. Welsher in two weeks.  (Tr. 228, 285).

On March 28, 2008, Plaintiff went to the Fayetteville Diagnostic Clinic for pulmonary

function testing.  (Tr. 334-338).  Dr. Kyle G. Hardy noted that spirometry testing showed that

---

[6]Empyema- a pleural effusion containing pus. Dorland's Illustrated Medical Dictionary
618 (31st ed. 2007).

[7]Subsegmental atelectasis- incomplete expansion of the part of a lung distal to an
occluded segmental bronchus. Dorland's Illustrated Medical Dictionary 173 (31st ed. 2007).

[8]Pneumothorax- an accumulation of air or gas in the pleural space. Dorland's Illustrated
Medical Dictionary 1497 (31st ed. 2007).

Plaintiff had mild obstruction lung disease. (Tr. 335).  Specifically the results showed Plaintiff, who

is sixty-seven inches tall, had one-second forced expiratory volume (FEV$_1$) values ranging from 2.27

to 2.42 liters across four trials, pre-bronchodilator therapy.  (Tr. 336).  Dr. Hardy further noted that

Plaintiff's test results showed evidence of improvement after bronchodilator therapy.  (Tr. 335).

Post-bronchodilator therapy, Plaintiff recorded FEV$_1$ values ranging from 2.61 to 2.65 liters across

four trials.  (Tr. 336).

On April 2, 2008, a physical RFC assessment was completed by non-examining medical

consultant Dr. Bill F. Payne.  (Tr. 339-348).  Dr. Payne opined that Plaintiff could occasionally lift

and carry twenty pounds, could frequently lift and carry ten pounds, and was unlimited in his ability

to push and pull within the limits of what he could lift and carry. (Tr. 342).  In addition, he reported

that Plaintiff could stand or walk for six hours in a normal eight hour workday, and sit for six hours

in a normal eight hour workday.  (Tr. 342).  The report noted that Plaintiff had no postural,

manipulative, visual, communicative, or environmental limitations.  (Tr. 343-345).

At his hearing before the ALJ on April 14, 2009, Plaintiff testified that he was first diagnosed

with the early stages of emphysema in 1984, at a hospital in Gravette.  (Tr. 59).  Plaintiff stated that

although he still smoked, he had cut down to a half a pack a day.  (Tr. 47).  Plaintiff testified that he

could walk for maybe a half hour before being out of breath and needing a fifteen minute break.  (Tr.

64).  Plaintiff further testified that he was taking over-the-counter medications and Albuterol to treat

his conditions.  (Tr. 46).  Plaintiff explained that he could not get into see a doctor because he did

not have insurance, so he went to the emergency room to get breathing treatments and was on

occasion given a prescription of Albuterol.  (Tr. 46).  Plaintiff stated he went to the emergency room

for breathing treatments maybe five times since 2007.  (Tr. 61).

At the hearing, Plaintiff also testified that he had arthritis in his back and knee.  (Tr. 64).

Plaintiff stated that the sharp pain in his knee caused him to limp a lot, and that he could only sit for

about an hour and half without experiencing pain.  (Tr. 66, 70).  Plaintiff testified that he was

diagnosed with rheumatoid arthritis at a Springdale hospital.  (Tr. 68).  Plaintiff stated that he

received cortisone shots to treat the pain in his knee.  (Tr. 69).  Plaintiff further testified that he had

pain where he had previously had shingles, and around his surgical incision site.  (Tr. 63, 64).

Plaintiff explained that the pain from his surgical incision was made worse by bending and twisting,

and that he treated this pain by taking Tylenol or Advil.  (Tr. 63).  Plaintiff also testified that he

could lift ten pounds frequently and twenty-five or thirty pounds occasionally.  (Tr. 67).

At the close of the hearing, the ALJ stated that he would send Plaintiff for an orthopedic

evaluation and x-rays of the lumbar spine.  (Tr. 78).  On April 29, 2009, Plaintiff had x-rays taken

of his lumbar spine at St. John's, Berryville.  (Tr. 380, 382).  Radiologist Dr. Victor Rozeboom noted

that the images showed mild osteoarthritis, most pronounced at the L1-L2.  (Tr. 380-382).

Also on April 29, 2009, Plaintiff underwent an orthopedic evaluation with Dr. Alice M.

Martinson at the Orthopedic & Sports Medicine Clinic of Northwest Arkansas.  (Tr. 367-368).

Plaintiff complained of persistent lower back pain, which got worse when bending or stooping.  (Tr.

367).  Plaintiff reported that he had never sought treatment for this pain in the past, and that he

treated it with Ibuprofen.  (Tr. 367).  Plaintiff further stated that he could lift about twenty-five

pounds without increasing his back pain.  (Tr. 367).  Plaintiff also complained of pain in the inner

aspect of his right knee.  (Tr. 367).  This pain was associated with swelling, and the knee

occasionally giving way.  (Tr. 367).  An x-ray of Plaintiff's right knee showed no bony

abnormalities.  (Tr. 368).  Dr. Martinson conducted sed rate, c-reactive protein (CRP), rheumatoid

factor (RA), and antinuclear antibodies (ANA) blood tests. (Tr. 368). Plaintiff's sed rate and CRP were normal, while his ANA and RA tests came back positive. (Tr. 368). Dr. Martinson stated that Plaintiff's lab profile was consistent with a diagnosis of rheumatoid arthritis. (Tr. 368). Dr. Martinson stated that it was "likely that internal medicine will recommend work restrictions based on his pulmonary function and systemic rheumatic condition." (Tr. 368).

In addition to the orthopedic evaluation, Dr. Martinson completed a medical source statement of Plaintiff's ability to do work related activities. (Tr. 370-375). Dr. Martinson opined that Plaintiff could lift and carry ten pounds continuously, twenty pounds frequently, and up to fifty pounds occasionally. (Tr. 370). Dr. Martinson noted that Plaintiff could sit, stand, or walk for two hours without interruption, and a total of eight hours in an eight hour workday with normal breaks. (Tr. 371). Dr. Martinson noted that Plaintiff could continuously reach, handle, finger, feel, push, or pull with both hands. (Tr. 372). Dr. Martinson further noted that Plaintiff could frequently climb stairs, ramps, ladders, or scaffolds, and frequently balance, stoop, kneel, crouch, or crawl. (Tr. 373). Finally, Dr. Martinson noted that without further evaluation of Plaintiff's pulmonary condition, she could not evaluate whether Plaintiff could tolerate exposure to humidity, wetness, dust, odors, fumes, and pulmonary irritants. (Tr. 374).

On March 2, 2009, Plaintiff entered into the emergency room of the Washington Regional Medical Center. (Tr. 376-377). Plaintiff was diagnosed with bronchitis, and discharged with prescriptions for Lortab, Doxycycline, and Albuterol. (Tr. 376-377).

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742,747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001);  see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairments" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim;  (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments;  (3) whether the impairment(s) meet or equal an

impairment in the listings;   (4) whether the impairment(s) prevent the claimant from doing past relevant work;  and (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. § 404.1520.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R.§ 404.1520.

## IV.     Discussion:

Plaintiff contends that the ALJ erred in concluding that he was not disabled during the relevant time period.  Defendant argues substantial evidence supports the ALJ's determination.

### A.      Plaintiff's Impairments

The ALJ found that Plaintiff had the following severe impairments:  emphysema and COPD. However, the ALJ found that Plaintiff did not have impairments that met or medically equaled a listed impairment.  He considered the listed impairments related to the respiratory system, found in section 3.00(E), and concluded that Plaintiff's severe impairments were not of such a severity, either singly or in combination, to meet one of the listed impairments.  Specifically, the ALJ compared Plaintiff's spirometry results with Listing 3.02, Table I.[9]  Considering the record as a whole, and reviewing section 3.00(E) and Listing 3.02, Table I, the Court believes there is substantial evidence to support the ALJ's conclusion that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

---

[9]The table indicates that a person of Plaintiff's height, sixty-seven inches, with a $FEV_1$ equal to or less than 1.35 liters is disabled.  Plaintiff's lowest  pre-bronchodilator therapy $FEV_1$ was 2.27 liters.  (Tr. 336).

   B.      **Subjective Complaints and Credibility Analysis:**

Plaintiff contends that the ALJ erred in discrediting his complaints of pain.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities;  (2) the duration, frequency, and intensity of his pain;  (3) precipitating and aggravating factors;  (4) dosage, effectiveness, and side effects of his medications; and  (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff contends that his impairments were disabling during the relevant time period, the evidence of record does not support this conclusion.

In the present case, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible, to the extent that they were inconsistent with the RFC.  (Tr. 90-91).  In the hearing, Plaintiff testified that he could walk for maybe a half hour before being out of breath and needing a fifteen minute break.  (Tr. 64).  In a function report dated March 7, 2008, Plaintiff stated that he could stand for one hour, walk for a half mile, or climb thirteen stairs before becoming fatigued.  (Tr. 169).  However, a non-examining medical consultant, who viewed Plaintiff's medical records and pulmonary function testing results, determined that Plaintiff could walk for six hours out of an eight hour workday, and would have no

restrictions climbing stairs.  (Tr. 342, 343).  Additionally, Plaintiff's medications are effective in

treating his condition.  Dr. Hardy noted that Plaintiff's spirometry results showed improvement after

bronchodilator therapy.  (Tr. 335).

In the hearing, Plaintiff also testified that because of arthritis in his back and knee, he limped

a lot, and could only sit for about an hour and half without experiencing pain. (Tr. 64, 66, 70).  At

his orthopedic evaluation, Plaintiff reported persistent lower back pain, which got worse when

bending or stooping.  (Tr. 367).   Despite these statements, after evaluating him, Dr. Martinson

determined that Plaintiff had the ability to sit for eight hours in a regular workday with normal

breaks, and could frequently stoop, crouch, or crawl. (Tr. 371, 373).  Plaintiff testified at the hearing

that he had been diagnosed with rheumatoid arthritis, and had received cortisone shots to treat the

pain in his knee.  (Tr. 69).  However, Plaintiff reported to Dr. Martinson that he never sought

treatment for his pain in the past, and that he treated it with Ibuprofen. (Tr. 367).  The record reflects

that the only time Plaintiff was evaluated for arthritis was when the ALJ ordered an orthopedic

evaluation.  Failure to seek regular treatment or obtain pain medication has been found to be

inconsistent with complaints of disabling pain.  Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir.

1996);  citing Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987).  The United States Court of

Appeals for the Eighth Circuit has stated that "A claimant's allegations of disabling pain  may be

discredited by evidence that the claimant has received minimal medical treatment and/or has taken

only occasional pain medications."  Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).

Additionally, Plaintiff's own descriptions of his abilities and daily activities are inconsistent

with his subjective complaints.  Plaintiff stated on multiple occasions that he had the ability to lift

as required by light work.  In a function report dated March 7, 2008, Plaintiff stated that he could lift

-13-

twenty pounds. (Tr. 169). At the hearing, Plaintiff testified that he could lift ten pounds frequently, and twenty-five to thirty pounds occasionally. (Tr. 67). Finally, in his orthopedic evaluation with Dr. Martinson, Plaintiff stated he could lift and carry twenty-five pounds without increasing his back pain. (Tr. 367). In addition, Plaintiff did not note any significant restrictions of daily activities caused by his impairments. Plaintiff stated that he had the ability to care for himself, and that he was able to do household chores. (Tr. 166, 177). Specifically, Plaintiff noted that he prepared his own meals daily, did the dishes twice a day, cleaned about once a week for two hours, and did laundry once a month for two hours. (Tr. 166). Additionally, Plaintiff noted that he would go shopping once a week for about an hour to an hour and half for basic needs. (Tr. 167). Plaintiff also noted that his daily routine included going for a walk and doing breathing exercises. (Tr. 164).

The Court notes that the ALJ credited Plaintiff's complaints that humidity and wetness caused him fatigue. Plaintiff noted in a function report dated March 7, 2008, that activities such as showering or cooking over a stove caused him shortness of breath. (Tr. 165, 166). Dr. Martinson noted in her medical source statement that without further evaluation of Plaintiff's pulmonary condition, she could not evaluate whether Plaintiff could tolerate exposure to humidity, wetness, dust, odors, fumes, and pulmonary irritants. (Tr. 374). In the RFC determination, the ALJ found that Plaintiff must avoid exposure to humidity, wetness, concentrated dusts, odors, fumes, and pulmonary irritants. (Tr. 90).

Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

C.     RFC Assessment:

The Court next turns to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person

can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore an "ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of the examining agency's medical consultants, the reports of non-examining medical consultants, Plaintiff's subjective complaints, and Plaintiff's medical records. He determined that Plaintiff could perform light work, except that he must avoid exposure to humidity, wetness, concentrated dusts, odors, fumes, and pulmonary irritants. (Tr. 90). In making the RFC determination, the ALJ noted Plaintiff's multiple emergency room visits for breathing problems, the radiological reports of x-rays of Plaintiff's lungs, Plaintiff's spirometry results, and the orthopedic evaluation of Dr. Martinson. The ALJ's RFC determination is consistent with the findings of the non-examining medical consultant's RFC evaluation, Dr. Martinson's medical source statement, and Plaintiff's own description of his lifting abilities. Additionally, noting Dr. Martinson's concern that Plaintiff's pulmonary condition might prohibit him from working in certain environmental conditions, the ALJ credited Plaintiff's

subjective complaint that humidity and wetness caused him fatigue.  A review of the medical

evidence in the record does not indicate that Plaintiff's examining physicians placed any restrictions

on his activities that would preclude him from performing the RFC determined.  See Hutton v.

Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against

a finding of total disability).  Based on the record as a whole, the Court finds substantial evidence

to support the ALJ's RFC determination.

>           D.        **Testimony of the Vocational Expert**

At the hearing, VE Dale Thomas testified that Plaintiff's past relevant work as a maintenance

mechanic had a specific vocational preparation (SVP) code of seven, and that skills which Plaintiff

had acquired on that job could transfer to light work jobs.  (Tr. 76).  When the ALJ asked the VE to

identify specific light work jobs to which Plaintiff's acquired skills would transfer, the VE listed belt

repairer, case finishing machine adjuster, hydraulic press repair person, gas welding machine

mechanic, and spray gun repairer.[10]  (Tr. 76).  The VE testified that this group of jobs represented

293,000 jobs in the national economy and five hundred in the state economy.  (Tr. 77).  The ALJ did

not specifically list out Plaintiff's impairments and limitations in a hypothetical for the VE. Rather,

he only asked the VE for a list of light work jobs to which Plaintiff's acquired skills could transfer.

Plaintiff's attorney provided the VE with the following hypothetical:

> [H]e can sit for about an hour and then he has to be able to change positions. Stand up for
> a while. Move around. And that he can walk or stand for about 30 minutes before he has to
> sit down and rest, and that any kind of twisting or moving or bending or stooping causes
> pain.

---

[10]Belt Repairer DOT # 630.684-014 (The ALJ did not include this job in his opinion);
Case Finishing Machine Adjuster, DOT # 626.381-010;  Hydraulic-Press Servicer, DOT #
626.381-018;  Gas-Welding-Equipment Mechanic, DOT # 626.381-014;  Spray Gun Repairer,
DOT # 630.381-026

(Tr. 77). The VE testified that given those criteria, Plaintiff would not be able to work the jobs he had previously identified. (Tr. 77). The VE explained that the jobs he identified were light work jobs, and required a person to be able to stand for "at least six out of the eight hours on a fairly constant basis." (Tr. 77). The VE further explained that the light work jobs required the ability to twist and rotate, which were precluded in the attorney's hypothetical. (Tr. 78).

The United States Court of Appeals for the Eighth Circuit has held that an ALJ is allowed to rely on VE testimony that a claimant had transferable skills, and that neither the ALJ or VE are required to identify the claimants transferable skills. Tucker v. Barnhart, 130 Fed.Appx. 67, 68 (8th Cir. 2005).[11] In the present case, while the VE did not specifically identify Plaintiff's transferable skills, the ALJ noted that Plaintiff's past relevant work required skills such as:

> [T]he ability to repair and maintain, in accordance with diagrams, sketches, operations manuals, manufacturer's specifications, or other instructions, machinery and mechanical equipment such as engines, motors, pneumatic tools, conveyor systems, or productions machines using hand tools, power tools, and precision measuring and testing instruments.

(Tr. 94). When the VE is present at the hearing to hear a claimant testify about their age, past work, and education level, it is not necessary for the ALJ to specify these in a hypothetical to the VE. Tucker, 130 Fed.Appx. at 68. Further, "it [is] not necessary for the ALJ to explain the meaning of light work to the VE." Id. In his answer to Plaintiff's hypothetical, the VE explained that light work required a person to be able to walk six hours out of an eight hour workday, and to have the ability

---

[11]The Court notes that there is a circuit split as to whether Social Security Ruling (SSR) 82-41; 1982 WL 31389; requires the ALJ and VE to identify transferable skills or not. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 549 (6th Cir. 2004) (holding that the ALJ does not need to identify transferable skills when relying on the testimony of a VE); Bray v. Comm'r of Soc. Sec., 554 F.3d 1219, 1223-1226 (9th Cir. 2009) (holding that the ALJ must identify transferable skills when relying on the testimony of a VE). The Eighth Circuit does not require the ALJ to identify transferable skills.

to twist and rotate. (Tr. 77-78). Both the physical RFC completed by non-examining medical consultant Dr. Payne, and the medical source statement from Dr. Martinson stated that Plaintiff could perform both of those tasks as required by light work. (Tr. 339-348, 370-375). Additionally, while the ALJ added additional environmental restrictions to Plaintiff's RFC, the DOT indicates that none of the jobs that the VE testified Plaintiff could do would be excluded by these restrictions.[12] Accordingly, the Court finds that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff was not disabled.

### E.    Fully and Fairly Develop the Record:

Finally the Court rejects Plaintiff's contention that the ALJ failed to fully and fairly develop the record because he failed to send Plaintiff for a consultative pulmonary examination.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 484, 488 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

Plaintiff noted that Dr. Martinson stated in her notes from the orthopedic evaluation, "I most strongly urge that medical evaluation of his [Plaintiff's] pulmonary status and his immunologic disease be performed and the results considered in the adjudication of this case." See Pl.'s Br at 16;

---

[12]This includes belt repairer, which the ALJ did not include in his opinion.

(Tr. 368).  What Plaintiff neglected to mention was that Dr. Martinson did not have Plaintiff's medical records when completing her orthopedic evaluation.  (Tr. 367).  These medical records include multiple trips to the emergency room for breathing issues, radiological reports of x-rays of Plaintiff's lungs, and pulmonary function testing reports.  All of this evidence was considered by a non-examining medical consultant when completing a physical RFC assessment, and the ALJ when making the RFC determination.  After reviewing all the evidence of record, the Court finds the ALJ had substantial evidence to support his determination.

## V.      Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that Plaintiff's complaint should be dismissed with prejudice.

DATED this 21st day of July 2011.

/s/ *Erin L. Setser*

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE